FILED

July 14 2015

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 14-0466

DA 14-0466

IN THE SUPREME COURT OF THE STATE OF MONTANA

2015 MT 197N

M & M REPOSSESSION and TRANSPORT, LLC,
d/b/a M & M INVESTIGATION AND PROCESS SERVING,

  Plaintiff and Appellant,

 v.

FIRST MADISON VALLEY BANK,
d/b/a YELLOWSTONE BASIN BANK,

  Defendant and Appellee.

APPEAL FROM: District Court of the Fifth Judicial District,
      In and For the County of Madison, Cause No. DV 29-11-95
      Honorable Loren Tucker, Presiding Judge

COUNSEL OF RECORD:

    For Appellant:

    Kelton Olney, Luxan & Murfitt, PLLP, Helena, Montana

    For Appellee:

    James McLean, Andrew J. Willett, Drysdale, McLean & Willett, PLLP,
    Bozeman, Montana

            Submitted on Briefs: May 6, 2015
               Decided: July 14, 2015

Filed:

                Clerk

Justice Patricia Cotter delivered the Opinion of the Court.

¶1      Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2      Plaintiff M & M Repossession and Transport, LLC (M & M), appeals from a judgment entered by the Fifth Judicial District Court, Madison County, in favor of Defendant First Madison Valley Bank. We affirm.

¶3      M & M is a Montana limited liability company which provides various services, including collection and repossession services for creditors. M & M's main office is located in Butte, Montana. First Madison Valley Bank is a Montana banking corporation with its main office in Ennis, Montana, and maintains additional branches including Yellowstone Basin Bank, First Boulder Valley Bank, and Montana City Bank (collectively "the Bank").

¶4      In the fall of 2010, the Bank had fallen behind in its collection efforts on past due or problem "non performing" borrowers and as a result was under regulatory pressure to remedy its accounts. Having collaborated with M & M in the past on repossession related work, the Bank invited M & M to present information on M & M's additional collection services. M & M then met with Bank officers to explain its collection and repossession services and corresponding fee schedules utilizing a PowerPoint presentation and informational handouts.

¶5      In the ensuing days, M & M prepared and delivered to the Bank a proposed Independent Contractor Agreement and Schedule A. On or about October 26, 2010, the

2

parties signed the Independent Contractor Agreement. Schedule A was neither initialed nor signed by the parties.

¶6     Paragraph 2 of the agreement, titled "Duties, Term, and Compensation," provided the following:

> The Contractor's duties, term of engagement, compensation and provisions for payment thereof shall be as set forth in the estimate previously provided to the Company by the Contractor and which is attached as Exhibit A, which may be amended in writing from time to time, or supplemented with subsequent estimates for services to be rendered by the Contractor and agreed to by the Company, and which collectively are hereby incorporated by reference.

The only fee schedule previously provided to the Bank was outlined in M & M's PowerPoint presentation. M & M did provide some additional repossession fees in an email, which was incorporated into Schedule A.

¶7      Schedule A specified "Duties" as follows:

> The Contractor will [assist the Bank] in the duties of Past Due Collections, Repossessions, Collection of Charge Off accounts, Work Outs – Mitigate loan loss, Locating, Skip tracing and Investigation procedures as the Company may require. . . .and shall fulfill any other duties reasonably requested by the Company and agreed to by the Contractor.

¶8     This dispute revolves around M & M's claims for compensation under the agreement as it relates to M & M's services on six of the Bank's loan accounts. The Bank readily disagreed with M & M's demand for a percentage fee totaling approximately $300,000 for M & M's services rendered on the six accounts. Consequently, the Bank suspended the work M & M was doing under the agreement.

¶9     On November 25, 2011, M & M filed suit against the Bank seeking damages for breach of contract, breach of the implied covenant of good faith and fair dealing, and an

alternative claim for unjust enrichment. The Bank answered and counterclaimed. The District Court held a two-day non-jury trial commencing on September 30, 2013. Following trial, the court issued its Findings of Fact and Conclusions of Law in which it determined that the fee schedule set forth in Schedule A was both ambiguous and confusing. The court then incorporated the fee schedule information proffered in M & M's PowerPoint presentation as extrinsic evidence to assist in construing the parties' agreement, citing § 28-2-905(2), MCA (addressing when extrinsic evidence concerning a written agreement may be considered). The court also considered the circumstances surrounding the execution of the agreement.

¶10    The court concluded that the Bank had not assigned or transferred ownership of any of the disputed accounts to M & M. It found that the Bank had only engaged M & M to complete a series of discrete tasks, none of which authorized M & M to pursue entire debt collections in its own discretion or entitled it to the claimed percentage fees. In reviewing the nature of M & M's completed services, the court determined that M & M was entitled to a reasonable fee on a quantum meruit basis rather than a percentage fee because the percentage fees applied only to "Bad Debt" collections. Citing the Bank's expert witness' "fair and reasonable" estimations, the court ordered the Bank to pay $52,363.50 to M & M for its services and fees and additional amounts totaling $1,750.00 and $500.00 on other specified accounts. The court dismissed M & M's claim for breach of the covenant of good faith and fair dealing with prejudice. M & M appeals.

¶11    M & M contends that the District Court erred in utilizing M & M's PowerPoint presentation as extrinsic evidence in order to construe the agreement's fee schedules, and

that the court erred by allowing M & M to recover fees only on a quantum meruit basis. It argues that its payment schedule was unambiguous. We disagree and concur with the District Court's determination that the agreement's percentage fee schedule was completely ambiguous. Schedule A provided verbatim in pertinent part:

- Thirty Five 35% percent – for all accounts Turned for collection
- Less than 1 year old 50% over one year old.
- Fifty 50% percent – on all accounts that go Legal- we have our own staff attorneys- we prepare our own summons and complaints and do all court filings and court litigation.

¶12 Schedule A's fee schedule is confusing and fails to describe the manner in which the fee schedule applies. As such, we find the District Court appropriately utilized M & M's PowerPoint presentation as extrinsic evidence to interpret the agreement as it related to M & M's work on behalf of the Bank's accounts. *See Mary J. Baker Revocable Trust v. Cenex Harvest States, Coops., Inc.*, 2007 MT 159, ¶ 19, 338 Mont. 41, 164 P.3d 851 ("construction and interpretation of a contract is a question of law" and "[l]ikewise, whether an ambiguity exists in a contract is a question of law") (citations omitted).

¶13 We further conclude that the District Court appropriately compensated M & M for the services it rendered to the Bank and correctly interpreted the law as it relates to the Bank and M & M's contractual relationship. *See Larson Lumber Co. v. Bilt Rite Constr. & Landscaping LLC*, 2014 MT 61, ¶ 26, 374 Mont. 167, 320 P.3d 471 ("We review a district court's conclusions of law to determine whether the court's interpretation of the law is correct."). We therefore uphold the District Court's Findings of Fact and Conclusions of Law.

¶14    We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions.  The District Court's findings of fact are supported by substantial evidence and the legal issues are controlled by settled Montana law, which the District Court correctly interpreted.

¶15    Affirmed.

/S/ PATRICIA COTTER

We Concur:

/S/ MIKE McGRATH
/S/ MICHAEL E WHEAT
/S/ BETH BAKER
/S/ JIM RICE